IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALLYSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC<br><br>Plaintiff,<br><br>v.<br><br>TRUSTMARK NATIONAL BANK; BENNIE BUTTS; JUD WATKINS; SOUTHERN BANCORP BANK; and RIVERHILLS BANK,<br><br>Defendants | Case No. 3:19-cv-941-CWR-FKB<br><br>Arising out of Case No. 3:18-cv-252<br>*Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*<br><br>Hon. Carlton W. Reeves, District Judge |

## DEFENDANT SOUTHERN BANCORP BANK'S MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Southern Bancorp Bank ("Southern") submits this memorandum brief in support of its motion to dismiss the claims by Allyson Mills, in her capacity as receiver for Arthur L. Adams and Madison Timber Properties (the "Receiver").

## INTRODUCTION

The Receiver asserted six (6) claims in her complaint against Southern. These claims include (a) civil conspiracy, (b) aiding and abetting, (c) recklessness, gross negligence, and negligence, (d) negligent retention and supervision, (e) violations of Mississippi's fraudulent transfer act and (f) violations of Mississippi's Racketeer Influenced and Corrupt Organization Act.

The claim of aiding and abetting is not recognized in Mississippi and must be dismissed. As for the Receiver's negligence claims, each should be dismissed

1

because the Receiver has failed to establish that Southern had a legal duty to monitor the bank accounts at issue or that Southern breached any such duty.  The Receiver's remaining claims each fail because the Receiver cannot establish at least one essential element: actual knowledge.  For these reasons alone, Southern is entitled to judgment as a matter of law on the face of the Receiver's complaint.

Additionally, the Receiver lacks standing to pursue the claims in this case.  As the Receiver, she stands in the shoes of Adams and Madison Timber —the wrongdoers giving rise to this litigation.  Thus, her claims are barred by the doctrine of *in pari delicto*.  For these reasons, Southern respectfully requests that the complaint be dismissed in its entirety as to Southern.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, at 557).

Under *Iqbal*, "two working principles" guide the Court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown — that the pleader is entitled to relief." *Id.* (citing F.R.C.P. 8(a)(2)) (internal quotations omitted).

Further, when the well-pleaded facts can be explained by lawful, unchoreographed, free-market behavior, conclusory allegations suggesting an invidious motive or unlawful agreement do not sufficiently state a claim for relief and the claim is subject to dismissal. *Id.* (citing *Twombly*, 550 U.S. at 567).

## FACTUAL BACKGROUND

The Court is well-acquainted with the general factual background surrounding the Madison Timber Ponzi scheme, and therefore Southern will not restate it here. Instead, Southern will focus on the few facts actually pleaded

against it in the complaint.

Trustmark Bank was the primary bank through which Adams conducted Madison Timber's business.  (Compl. ¶ 27).  At Trustmark, Adams used a single account for Madison Timber's business.  Trustmark asked Adams to close his accounts in late 2016.  (Compl. ¶ 50).  Adams closed his Trustmark accounts and opened new accounts at three different banks to conduct transactions for Madison Timber:  First National Bank of Clarksdale ("FNBC"), RiverHills, and Southern. (Compl. ¶ 66).  Adams used these three accounts until Madison Timber's collapse on April 19, 2018.  (Compl. ¶ 67).  Adams did not use these accounts purchase timber or to receive money from any timber mills.  (Compl. ¶ 91).

At Southern Adams controlled one account in the name of Madison Timber and two accounts in his own name.  (Compl. ¶ 72).  Although Madison Timber's investors' money was primarily deposited with FNBC, there was some investors' money directly deposited into the Madison Timber account with Southern.  (Compl. ¶ 73).  Adams moved investors' money (a) from FNBC to each of the accounts at Southern, (b) between the three Southern accounts, and (c) from the three Southern accounts to his to RiverHills account(s), from which he made monthly payments to investors.  (Compl. ¶¶ 74-75).  In addition to making payments to investors, Adams also used money for his personal and business expenses, such as loan payments, credit card bills, and charitable gifts.  (Compl. ¶ 75).

In March 2018, Adams made 24 deposits to the Madison Timber account at Southern, all in round numbers such as $100,000, $500,000, and $1,000,000.

(Compl. ¶ 76).  On March 13, 2018, the Madison Timber account at Southern received deposits in the amounts of $1,500,000, $300,000, $500,000, and $200,000. (Compl. ¶ 77).  The next day, Adams wired $2,000,000 out of the account to his RiverHills account(s).  *Id.*  On March 30, 2018, the Southern Madison Timber account received a deposit in the amount of $1,000,000.  *Id.*  The same day Adams wired $1,000,000 back out.  *Id.*  Southern collected fees for the banking services it provided to Adams and Madison Timber.  (Compl. ¶ 96).

## ARGUMENT

The well-pleaded facts do not establish any claim for relief against Southern and, in any event, the Receiver's claims are barred by *in pari delicto*.

## I.   The Receiver has not Sufficiently Pleaded a Plausible Claim for Relief Against Southern.

Each of the claims asserted by the Receiver against Southern should be dismissed because the well-pleaded facts do not establish a plausible claim for relief.  Each of these claims are discussed below.

### a. Mississippi Does Not Recognize Claims for Civil Aiding and Abetting.

The state courts of Mississippi do not recognize the tort off aiding and abetting.  To the contrary, the only federal court in Mississippi known to consider the issue clearly stated that "[n]o Mississippi court has ever recognized any of the subsections of the Restatement (Second) of Torts §876 as viable causes of action." *In re Evans,* 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011).  "Additionally, no Mississippi court has recognized a claim for civil aiding and abetting, whether

under §876(b) or §876(c)."  *Id.*  "When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts."  *In re Depuy Orthopaedics, Pinnacle Hip Implant Prods. Liability Lit.,* 888 F.3d 753, 781-782 (5th Cir. 2018) (reversing multi-million-dollar jury verdict because, among other things, the district court recognized an aiding-and-abetting claim under Restatement §876(b) when Texas Supreme Court had not yet recognized claim).  For this reason, the Receiver's claim for civil aiding and abetting fails as a matter of law.

### b. Plaintiff's Claims of Gross and/or Simple Negligence Fail as a matter of Law because Southern has No Legal Duty and there is no Proximate Cause.

The Receiver's kitchen-sink claims of recklessness, gross negligence, negligence, negligent retention, and negligent supervision fail for several reasons. As a threshold matter, it is unclear whose negligence claim the Receiver is attempting to assert.  She stands in the shoes of Adams and Madison Timber, but the basis of her negligence claims is that "[a] reasonable bank in same (sic) or similar circumstances would have stopped the fraud."  (Compl. ¶ 123).  But the fraud was done *by* Adams and Madison Timber, not *to* them.

Identifying the basis of the Receiver's gross and simple negligence claims is crucial to determine whether the elements of the claims have been sufficiently pleaded.  To survive a motion to dismiss, the Receiver must sufficiently plead "duty, breach, causation and injury."  *Sanderson Farms v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (quoting *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917,

922 (Miss. 2006)). "Duty and breach of that duty establish the negligence, while causation and damages are required to show that the plaintiff is entitled to recover for harm resulting from the negligent act." *Crosthwait v. S. Health Corp. of Houston*, 94 So. 3d 1126, 1129–30 (Miss. Ct. App. 2011), *aff'd*, 94 So. 3d 1070 (Miss. 2012) (citing *Fisher v. Deer*, 942 So. 2d 217, 219 (¶ 6) (Miss. Ct. App. 2006)). Here, none of these elements is sufficiently pleaded.

In the banking context, as in most contexts, the existence and scope of duty is determined largely by the relationship among the claimants and the alleged tortfeasor. To the extent the Receiver seeks to redress injury to investors, which she lacks standing to do, the complaint does not plead sufficient facts to establish a duty from Southern to non-customers, the investors. In fact, banks do *not* owe non-customers a duty to protect them from the intentional torts of customers. *Midwest Feeders*, 886 F.3d 507 (5th Cir. 2018) (surveying case law and concluding on an Erie guess not to impose a new regime of liability for Mississippi banks). *Id*. at 519 (citing *Keen v. Miller Envtl. Grp.*, 702 F.3d 239, 243–44 (5th Cir. 2012) Thus, based on the Fifth Circuit's decision in *Midwest*, the Receiver's claim that she has taken an assignment of claims from Adams' investors (*i.e.*, non-customers), fails as a matter of law. More importantly, and as discussed below, the well-pleaded facts do not support any reasonable inference Southern breached any legal duties owed to Adams and Madison Timber.

### i. Southern had No Legal Duty to Monitor the Accounts at Issue and Did Not Breach any Such Legal Duty.

The Receiver asserts that Southern, based on unidentified "U.S. anti-

laundering laws and regulations," was required to "investigate suspicious and potentially illegal banking activity." (Compl. ¶ 94). The gist of her claim is that Southern failed to monitor activity in the Adams-controlled accounts and thereby became a guarantor for all criminal acts of its accountholders. But courts consistently refuse to recognize such a "nebulous" duty. *See, e.g.*, *Wiand v. Wells Fargo Bank*, 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank*, 677 Fed. Appx. 573 (11th Cir. 2017); *Freeman v. Dean Witter Reynolds*, 865 So. 2d 543, 552 (Fla. 2d DCA 2003); *Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904, 907 (11th Cir. 2012) (holding there is no duty on a bank to investigate transactions).

In *Chaney*, the Fifth Circuit recognized that there are "no cases suggesting some broad duty for financial institutions to monitor all their accounts for suspicious activity and to investigate that activity upon discovery," and refused "to impose such an expansive obligation." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 234 (5th Cir. 2010). Further, "Unless there is a special instruction or restriction on an account, a banking customer has a right to do as he wishes with the funds in his account." *In re Meridian Asset Mgmt.*, 296 B.R. 243, 265 (Bankr. N.D. Fla. 2003). "Case law imputes no duty on banks to monitor or micro-manage a customer's actions or his money . . ." *Id.*; *Frigon v. Enfield Say. And Loan Ass'n,* 486 A.2d 630, 633 (Conn. 1985) ("The fact that a bank is indebted to its account holders for the amount of the funds that they have deposited imposes no special duty of care for the safekeeping of the funds on deposit.") (citations omitted).

In *Wiand*, a court appointed receiver for multiple hedge funds sued Wells Fargo for negligence in connection with a Ponzi scheme perpetrated by the hedge funds' manager.  86 F. Supp. 3d at 1322.  Two of the hedge funds were Wells Fargo customers.  Additionally, Wells Fargo invested in two of the hedge funds and loaned money to the manager after conducting due diligence.  The receiver in *Wiand* alleged that the manager fraudulently transferred large sums of money between accounts which triggered fraud alerts at the bank and, thus, the receiver argued the bank failed to follow its own internal procedures for money laundering and as required by federal regulations.  Even based on these facts, the *Wiand* court concluded that the bank had no legal duty to investigate transactions made by authorized agents of the account holder.  *Id.* (citing *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 948 n.7 (11th Cir. 2014) ("… the Florida Supreme Court and this Court have held that [banks] generally have no duty to investigate transactions made by authorized agents of the account holder.").

Here, the Receiver asserts that Adams used money from his Southern accounts for loan payments, credit card bills, and charitable gifts.  The inference the Receiver asks the Court to draw is that Southern should have gleaned from these transactions that Adams was breaching an unspecified duty to someone.  This theory, too, lacks any legal merit.  In essence, the Receiver is asking the Court to look beyond a simple depository relationship and to create some type of fiduciary relationship owed by Southern to Adams or Madison Timber.  Mississippi law has consistently held that there is no fiduciary duty between a bank and its

9

customer.  *See e.g.*, *Burgess v. Bankplus*, 830 So. 2d 1223, 1227-28 (Miss. 2002).

To the contrary, the only fiduciary in this case was Adams in his capacity for Madison Timber and his investors/victims.  In Mississippi, a bank has no duty of inquiry and is not construed to have notice of actions taken by someone like Adams who exceeds his authority with regard to bank transactions.  Miss. Code Ann. §81-5-53 (a bank dealing with a person who is, or may be, an agent, fiduciary, or corporate officer "*shall not be deemed to have notice of or be obligated to inquire* as to any lack of or limitation upon the power of such person by reason in and of itself, either of the fact that such person has executed in his representative capacity *and is himself the payee or indorsee of any check, bill, note or other promise or order, . . .*") (emphasis added).

There is no duty in Mississippi upon a bank to inquire as to whether a fiduciary "has the authority to write checks on the fiduciary account and make them payable to himself."  *Collier v. Trustmark Nat. Bank*, 678 So. 2d 693, 697 (Miss. 1996) (banks must have "actual knowledge" that a fiduciary is breaching his duties before liability arises).  Courts from other states consistently reached the same conclusion.  *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 54 (2012) ("A bank generally does not have a duty to investigate or inquire into the withdrawal of deposited funds by a person authorized to draw on the account to ensure that the funds are not being misappropriated."); *2006 Frank Calandra, Jr. Irrevocable Trust y. Signature Bank Corporation*, 503 Fed. Appx. 51, 53-54 (2d Cir. 2012); *Lawrence v. Bank of America*, 455 Fed. Appx. 904, 907 (11th Cir. 2012)

10

("finding that banks have the 'right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds'") (internal quotes omitted); *In re Knox*, 64 N.Y.2d 434, 438 (Ct. App. NY 1985) ("A bank is not in the normal course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary . . . ."); *Fort v. Suntrust Bank*, 2016 WL 4492898, at *8 (D.S.C. Aug. 26, 2016) ("There is no overarching duty between a bank and its customers.").

*Collier*, Mississippi Code §81-5-53 and the persuasive authority from the courts above all undercut the notion that Southern was on notice or had any duty of inquiry arising from Adams' apparent self-dealing transfers.  Indeed, the Receiver acknowledges that Adams made the alleged self-dealing payments "out of accounts in his own name."  Southern had no legal duty to monitor such activity. Because Southern had no legal duty to monitor the transactions or accounts at issue, the Receiver's claims for negligence (simple and gross) necessarily fail.

### ii.  Proximate Cause is Required for All Negligence Claims and was Not Sufficiently Pled.

Under Mississippi law, the question of proximate causation is "generally a matter of law" properly decided by the courts.  *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 341 (Miss. 2004).  "Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred."  *Id*.  Under Mississippi law, proximate causation requires direct injury to the party asserting the claim:  where a plaintiff derives her claim from a third-

11

party's injury, proximate cause does not exist under the "remoteness doctrine." *Id.*

Here, the complaint fails to sufficiently plead proximate causation because the Receiver stands in the shoes of Madison Timber and Adams, not their investors who suffered financial losses.  The complaint does not and cannot articulate an injury to Madison Timber or Adams distinct from the injuries to their investors.  In each cause of action, the Receiver concedes Madison Timber's and Adams's "liabilities" exist only as a function of investor activity:  "Defendants contributed to Madison Timber's success over time, and therefore to the Receivership Estate's liabilities today."  (Compl. ¶¶ 105, 116, 127, 137, and 153).  In other words, the Receivership Estate's liabilities are remote injuries, merely investor losses restated as Madison Timber "liabilities."  None of Southern's actions are alleged to have caused a direct loss to Madison Timber or Adams.

Moreover, a bank providing deposit account services to a customer is not a cause which, in a natural and continuous sequence unbroken by any efficient intervening cause, produces damages from a Ponzi scheme.  The criminal act of the bank's customer is an efficient intervening cause.  And the complaint does not establish that, without Southern's accounts, the end result would not have occurred.  Indeed, the Receiver concedes the Ponzi scheme was well underway before Adams decided to spread his transactions among several banks.  Southern submits that Adams' decision to spread his transactions among at least three banks was his attempt to conceal from each bank the true nature of his business dealings.  Furthermore, because Adams used multiple banks and likely could have opened

12

accounts at any number of other banks, it cannot be reasonably inferred that, without Southern, the Ponzi scheme would have been averted or diminished in any way.  The well-pleaded allegations do not support the reasonable inference that Southern's actions were the proximate cause of any damages to the Receiver and, therefore, each of the Receiver's claims is subject to dismissal.

### c. Actual Knowledge is Required for the Remaining Claims, and the Facts Do Not Establish Southern had It.

The Receiver's claims for civil conspiracy, for violation of Mississippi's RICO Act and for fraudulent transfer each require that Southern had *actual* knowledge of the Ponzi scheme or of some breach of duty by Adams.

- A claim of civil conspiracy requires proof that the alleged conspirator "knew of [the] fraudulent scheme." *Midwest Feeders*, 886 F.3d at 520.

- Mississippi's RICO Act, like the federal corollary on which it is based, requires defendants to have actual knowledge that their actions are unlawful.  Miss. Code §97-19-83; 18 U.S.C. 1343.

- Finally, even a fraudulent transfer is not voidable as against a person who took in good faith and for reasonably equivalent value.  Miss. Code. Ann. §15-3-113(1).

In the absence of actual knowledge of the Ponzi scheme, a bank's acceptance of routine banking fees for routine banking services could be nothing other than good faith acceptance of fees for services rendered.

As to what "actual knowledge" means in the context of a depositary account used by a fiduciary (*i.e.*, Adams) to commit fraud (which is what the Receiver alleges occurred here), the Mississippi Supreme Court has adopted the definition of actual knowledge used by the Ohio Supreme Court, which defined "actual knowledge" as:

> ... awareness at the moment of the transaction that the fiduciary is defrauding the principal. It means express factual information that funds are being used for private purposes in violation of the fiduciary relationship.

*Collier*, 678 So. 2d at 697 (quoting *Master Chemical Corp. v. Inkrott*, 563 N.E.2d 26, 30–31 (Ohio 1990)).

Additionally, where "an essentially subjective state of mind is an element of a cause of action" the Fifth Circuit has declined to allow "actual knowledge" to be met by a corporation's collective knowledge, instead requiring that the state of mind "actually exist" in at least one individual and not be imputed on the basis of general principles of agency."  *Chaney*, 595 F.3d at 241 (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions*, 365 F.3d 353, 366 (5th Cir. 2004)) (citing *United States v. Philip Morris USA*, 566 F.3d 1095, 1122 (D.C. Cir. 2009) (distinguishing "collective knowledge" from "collective intent" and questioning the latter's "legal soundness"); Restatement (2nd) Agency §275, comment b).

Here, the Receiver asserts in conclusory fashion two bases for Southern's alleged actual knowledge.  First, the Receiver baldly asserts that the "defendants" knew about Adams' and Madison Timber's scheme because they could "see" it in recent financial statements, tax returns, and terms of the promissory notes between Madison Timber and investors.  (Compl. ¶¶ 87-93)  But the Receiver does not allege that Southern had possession of or access to any of the referenced documents, much less a reason to study them and question their veracity.  And these types of documents are not the type a depository institution would typically require in connection with opening bank accounts.  Moreover, the Receiver does not even

14

allege that at least one individual employed by Southern was actually aware in the moment of any transaction that Adams or Madison Timber were defrauding anyone.

Second, the Receiver alleges "erratic" transactions and self-dealing transactions put Southern on notice of a Ponzi scheme. Yet, by hedging with "should have known" language, the Receiver fails to allege the required actual knowledge of the fraudulent scheme. *Litson-Gruenber v. JPMorgan Chase & Co.,* 2009 WL 4884426, at *2 (N.D. Tex. Dec. 16, 2009) (dismissing claims in a Ponzi-scheme case because "pleading based on an allegation the defendant 'knew or should have known' is insufficient" for actual knowledge); *Neilson v. Union Bank of California, N.A.,* 2003 WL 27374137, at *10 (C.D. Cal. Feb. 20, 2003) (collecting authorities). Anything short of actual knowledge does not allow for the existence of an actual agreement, intent, or bad faith by Southern to further the fraud. Notably, in litigation arising from the Bernie Madoff scandal, the largest Ponzi scheme in U.S. history, the Second Circuit affirmed that "erratic" activity in fiduciary accounts does not support the inference of a bank's actual knowledge of a customer's fraud, and therefore dismissal is appropriate. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 146 (S.D.N.Y. 2010), *aff'd in part*, 431 Fed. Appx. 17 (2d Cir. 2011), and *aff'd*, 651 F.3d 268 (2d Cir. 2011).

The Receiver alleges "Southern Bancorp [and other defendants] had before them the nuts and bolts of the Madison Timber Ponzi scheme." This allegation, however, fails to satisfy the requirement of actual knowledge. *See, e.g., Rosner v. Bank of China,* 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008) ("courts

overwhelmingly recognize" that "actual knowledge of a fraud" is not established "based on allegations of . . . ignorance of obvious 'red flags'"), *aff'd*, 349 Fed. Appx. 637 (2d Cir. 2009); *Honig v. Kornfeld,* 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) ("red flags fail to establish actual knowledge"); *Chemtex v. St. Anthony Enterprises,* 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege actual knowledge"); *In re Int'l Mgmt. Assocs.,* 563 B.R. 393, 420 (Bankr. N.D. Ga. 2017) ("allegations of 'red flags' were insufficient to establish the bank's actual knowledge of existence of the Ponzi scheme").

The well-pleaded facts as to Southern are insufficient to assign actual knowledge of the scheme to Southern, much less the existence of an agreement by Southern to participate in the scheme.  Therefore, the Receiver's civil conspiracy claim fails as a matter of law.

### d.  The Well-Pleaded Facts are Insufficient to Establish a Plausible Claim of Civil Conspiracy.

The Receiver has not alleged facts to establish each element of a claim of civil conspiracy.  In addition to lack of actual knowledge and proximate causation of damages, the well-pleaded facts do not establish "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result."  *Orr v. Morgan,* 230 So. 3d 368, 375 (Miss. Ct. App. 2017) (citations, brackets, and ellipsis omitted).  And in alleging a conspiracy to commit fraud, the Receiver is required to plead details with particularity – times,

2069600-v1

dates, places, names.  F.R.C.P. 9(b).  No such details are pleaded.

As to element (1), no agreement is alleged to have existed among Southern, Adams, and Madison Timber for the purpose of furthering the Ponzi scheme.  The Receiver merely asserts that "defendants conspired with Adams."  This is wholly insufficient to establish element (1).  Additionally, for Southern to agree to accomplish an unlawful purpose, plainly Southern must know of the unlawful purpose.  *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. App. 2013) (citing 16 Am. Jur. 2d Conspiracy §51) (stating "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement."); *see also Midwest Feeders,* 886 F.3d at 520 (civil conspiracy requires proof that conspirator "knew of [the] fraudulent scheme").  As explained above, the facts do not support the reasonable inference of actual knowledge by Southern.  Thus, element (2) is also not sufficiently pleaded.  Element (3) is likewise lacking as to Southern because no overt action on the part of Southern is alleged.  The Receiver only alleges silence and passivity, which also supports the inference of *ignorance* by Southern.  And, as explained above, the Receiver cannot show that damages to the Receivership estate were proximately caused by Southern.  Therefore, element (4) also fails.

Because each element of civil conspiracy is not sufficiently pleaded, the Court should dismiss the Receiver's claim of civil conspiracy against Southern.

### e.  The Facts are Insufficient to Establish a Plausible Claim that Southern Violated Mississippi's RICO Statutes.

The Receiver's claim for alleged violation of Mississippi's RICO statutes fails

for several reasons.

### i.  Southern was not Convicted of a RICO Predicate Offense.

Mississippi's RICO statutes provide a civil remedy to victims of racketeering, but only if the defendant has been convicted of a RICO offense.  Miss. Code. Ann. §97-43-9(5) (stating, "Any aggrieved person may institute a civil proceeding under subsection (1) of this section against any person or enterprise <u>convicted of engaging in activity in violation of this chapter</u>.") (emphasis added); Miss. Code. Ann. §97-43-9(6) (stating, "Any person who is injured by reason of any violation of the provisions of this chapter shall have a cause of action against any person or enterprise <u>convicted of engaging in activity in violation of this chapter</u> for threefold the actual damages sustained and, when appropriate, punitive damages.") (emphasis added).  Neither Southern nor any of its employees has been convicted of engaging in any activity that would constitute a violation of Mississippi's RICO statutes.  Therefore, the Receiver's claim for alleged RICO violations must be dismissed.

### ii.  The Complaint Lacks the Particulars Required by Rule 9(b) While Unfairly Stigmatizing Southern.

Additionally, when fraud is alleged as a predicate act in a RICO claim, Federal Rule of Civil Procedure 9(b) requires particularity in pleading fraud.  *Tel-Phonic Servs. v. TBS Int'l.*, 975 F.2d 1134, 1138–39 (5th Cir. 1992).  To this end, allegations of fraud must, "[a]t a minimum," describe the "[1] time, [2] place, and [3] contents of [each of] the false representations, as well as [4] the identity of the person making the misrepresentation and [5] what he obtained thereby."  *Id*.  This requirement serves two purposes of Rule 9(b)—providing fair notice of claim and

safeguarding defendants' reputations—an especially important consideration where a community bank faces racketeering allegations. *Shushany v. Allwaste,* 992 F.2d 517 (5th Cir. 1993). Here, the complaint does not provide these particulars.

This second primary purpose – safeguarding defendants' reputations – is especially important in a RICO claim because such claims are highly stigmatizing. "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). "Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). For this reason, many federal courts (including this Court) require filing of RICO Statements when claims are asserted under the federal Racketeer Influenced and Corrupt Organization Act. *See* L.U. Civ. R. 83.8. The RICO Statement requires all particulars of the time, place, participants, and manner of specific actions *of each defendant* giving rise to the RICO claim. L.U. Civ. R. 83.8. It includes identification of each alleged victim and a statement of "how each victim was allegedly injured." *Id.* When the RICO claim is based on predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, as it is in the instant case, the RICO Statement requires the "circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (citing F.R.C.P. 9(b)). Among other things, the plaintiff must "identify the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made." *Id.* None of this type of information is provided

19

regarding Southern.  Though the Local Rules do not require a RICO Statement for claims brought under Mississippi's RICO statutes, the detail required by the federal RICO Statement serves to illustrate the Receiver's woefully inadequate facts alleged as to Southern.  This claim should be dismissed.

### iii.  The Facts do not Show a Pattern of Racketeering Activity in Which Southern Participated.

Under the Act, "racketeering activity" means "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit any crime which is chargeable" under one of sixteen identified sections of the Mississippi Code.  Miss. Code. Ann. §97-43-3(a).  A "pattern of racketeering activity" means "engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents."  Miss. Code. Ann. §97-43-3(d).  Here, where fraud is a predicate act underlying the Receiver's RICO claim, she must plead the details of the predicate acts with particularity.

The complaint does no more than identify Madison Timber as the fraud enterprise which engaged in a pattern of racketeering.  None of the Rule 9(b) particulars are pleaded.  Simply applying the label of "racketeering" is insufficient. Likewise, the Receiver's claims that Southern participated in a "fraud enterprise" through a pattern of racketeering activity are conclusory and not based on *any* alleged acts on Southern's part.  The complaint establishes Southern was a bank whose customer committed fraud in part through use of his customer-controlled

20

bank accounts at Southern.  But Southern is again left guessing as to what specific acts *Southern* is supposed to have taken as part of an alleged pattern of racketeering activity.

### iv.  The Receiver has not been Injured by Reason of Alleged Violations of the Act.

Additionally, a civil action under the Act may only be filed by a "person who is injured by reason" of a violation of the Act.  *Id.*  The Receiver, standing in the shoes of the masterminds and beneficiaries of the alleged RICO scheme, is not a person injured by reason of a violation of the Act.  In fact, the Receiver has alleged that Southern "contributed to the success" of Adams's and Madison Timber's scheme.  (Compl. ¶ 6).  Therefore, the Receiver cannot meet another threshold requirement for a RICO claim against Southern, and the claim should be dismissed.

To the extent the Receiver is claiming Madison Timber was injured by Adams' conduct, the Receiver has not alleged any RICO predicate act as between Adams and Madison Timber.  The underlying Ponzi scheme and, specifically, Adams' and Madison Timber's wire fraud was the predicate act relied upon by the Receiver.  But the Ponzi scheme did not harm Madison Timber; it harmed non-party investors.  As between Adams and Madison Timber, the Receiver only vaguely alleged "breaches of duties" owed by Adams to Madison Timber.  Breaches of duties are neither RICO predicate acts nor convictable criminal offenses.

### f.  The Facts are Insufficient to Establish a Plausible Claim of Fraudulent Transfer.

The Receiver is not in a position to make a claim against Southern under

Mississippi's Fraudulent Transfer Act (MFTA), Mississippi Code §15-3-101 et seq., and the well-pleaded facts do not support her claim.

### i. The Receiver is not a Creditor of Adams or Madison Timber and, therefore, Cannot Claw Back Bank Account Fees under the MFTA.

The MFTA provides that a creditor may bring an action to obtain avoidance of a transfer or obligation of the debtor, to obtain an attachment against an asset transferred by the debtor, to obtain an injunction against further disposition of the debtor's assets, or to appoint a receiver to "take charge" of the debtor's transferred asset.  Miss. Code Ann. §15-3-111.  Additionally, it is well known that Mississippi follows the strict textual approach when the text of a statute is unambiguous. *Parker v. Leak River Cellulose*, 621 Fed. Appx. 271, 273 (5th Cir. 2015).  Courts have applied the MFTA according to its plain language.  In analyzing the MFTA, this Court has stated, "Clearly, to bring an action pursuant to UFTA, the plaintiff must be a creditor of the debtor/defendant."  *Natchez Reg. Med. Ctr. V. Quorum Health Resources*, 2010 WL 3324955, at *6 (S.D. Miss. Aug. 20, 2010) (citing to Miss. Code Ann. §15-3-111).

Here, the alleged "transfer" was Adams's and Madison Timber's payment of fees to Southern for their use of Southern bank accounts.  (Compl. ¶ 143).  The Receiver attempts to claw back those bank account fees.  But the Receiver is not a creditor of Adams or Madison Timber.  She stands in the shoes of Southern's customers, Adams and Madison Timber.  As such, pursuant to Miss. Code Ann. §15-3-107, the Receiver's fraudulent transfer claim should be dismissed because the

Receiver is not a creditor of the debtors who paid the bank fees.

ii. **The Well-Pleaded Facts do not Support the Reasonable Inference that a Fraudulent Transfer to Southern Occurred.**

A fraudulent transfer can be avoided if the creditor can show that the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor. Miss. Code. Ann. §15-3-107(1). Here, the well-pleaded facts do not support the reasonable inference that Adams and Madison Timber paid bank account fees with fraudulent intent. There is no allegation that they paid the fees to protect those assets (the fees) from creditors. To the contrary, payment of bank account fees is necessary to maintain a bank account and obtain wire transfers and other bank services. Notwithstanding any activity that may take place in the account, fees are fees. The payments were made to obtain ongoing bank account services. The Receiver's claim fails on this basis, alone.

Additionally, the Receiver's claim fails because "A transfer or obligation is not voidable under Section 15-3-107(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Miss. Code. Ann. §15-3-113(1). Here, the complaint is devoid of facts to support the reasonable inference that Southern (1) accepted routine banking fees in bad faith and (2) the banking services provided by Southern in exchange for the fees were not of reasonably equivalent value to the fees paid. Customers' payments of routine banking fees are part of the "daily grist of the mill." There is a complete absence of any facts supporting the inference of bad faith, or that Southern's services were

substantially less valuable that the fees it received for them.  Therefore, the

Receiver has not stated a plausible claim under the MFTA against Southern and

this claim should be dismissed.

**II.  The Receiver's Claims on Behalf of Adams and Madison Timber are Barred by the Doctrine of *In Pari Delicto*, and She Lacks Standing to Sue on Behalf of Investors.**

All of the Receiver's claims against Southern should be dismissed for the

additional reasons that her claims on behalf of Adams and Madison Timber are

barred by *in pari delicto*, and she lacks standing to sue on behalf of investors.

**a.  The Receiver Stands in the Shoes of Adams and Madison Timber, the Wrongdoers, and Therefore Her Claims are Barred by *In Pari Delicto*.**

*In pari delicto* enforces the longstanding equitable principle that a plaintiff

"who has participated in wrongdoing may not recover damages resulting from the

wrongdoing."  *In Pari Delicto* Doctrine, BLACK'S LAW DICTIONARY (10th ed.

2014).  The doctrine "applies where [i] the plaintiff is equally or more culpable

than the defendant or [ii] acts with the same or greater knowledge as to the

illegality or wrongfulness of the transaction."  *Latham v. Johnson,* 262 So. 3d 569,

582 (Miss. App. 2018) (citing 27A Am. Jur. 2d, Equity §103, p. 641 (2008)), *reh'g*

*denied* (Oct. 9, 2018); *J. B. Hunt Transp. v. Forrest Gen. Hosp.*, 34 So. 3d 1171, 1174

(Miss. 2010) (joint tortfeasor may recover against others "only when [she] is liable

merely because of passive negligence").  At the motion to dismiss stage, an

affirmative defense like *in pari delicto* bars recovery where the defense is

established on the face of the complaint.  *Alexander v. Verizon Wireless Servs.*, 875

24

F.3d 243 (5th Cir. 2017).

Here, *in pari delicto* bars recovery on the face of the complaint.  The Receiver stands in the shoes of Madison Timber and Adams.  (Compl. ¶ 5); Order Appointing Receiver, D.I. 33, *SEC v. Adams*, No. 3:18-cv-00252 (S.D. Miss.); *Hymel v. FDIC*, 925 F.2d 881 (5th Cir. 1991).  The Receiver concedes Madison Timber and Adams have unclean hands. (Compl. ¶¶ 22, 100).  Their admitted culpability as perpetrators of a Ponzi scheme far surpasses the alleged culpability of Southern, whose alleged role is entirely passive.  Where two parties share responsibility for a tort, the "active wrongdoer" is more at fault than the "passive wrongdoer."  *Long Term Care v. Jesco*, 560 So. 2d 717, 721 (Miss. 1990).  Thus, the Receiver's claims against Southern are barred by *in pari delicto*.

Southern recognizes that several courts have rejected application of *in pari delicto* in federal equity receiver cases based on the facts presented in those cases.  However, the facts of the instant case are more akin to those cases in which courts have applied *in pari delicto* to bar claims by a receiver.  In *Knauer v. Jonathon Roberts Financial Group*, for example, two entities operated a Ponzi scheme in the late 1990s that collected over $60 million from hundreds of investors.  348 F.3d 230, 231 (7th Cir. 2003).  In connection with a Securities and Exchange Commission action against individuals and entities involved in the Ponzi scheme, the district court appointed Knauer as receiver for the entities.  *Id*.  Subsequently, Knauer filed suit alleging that the defendants were in part responsible for losses resulting to the entities.  *Id*.  The district court dismissed Knauer's complaint

pursuant to Rule 12(b)(6) of the Federal Rules, holding that the doctrine of *in pari delicto* barred the entities from pursuing losses for which they themselves were largely culpable. *Id.* On appeal, the Seventh Circuit affirmed. *Id.*

In distinguishing previous cases where IPD did not bar a receiver's claims, which almost uniformly involved solely or primarily claims of fraudulent transfer, the Court discussed the nature of the Receiver's claims and the targets of those claims. Knauer was "not seeking to recover the diverted funds from the beneficiaries of the diversions . . ." but rather to claim tort damages from those alleged to be partly to blame for their occurrence. *Id.* at 236. Because tort claims against alleged co-conspirators invoked different equities than fraudulent transfer claims against beneficiaries of ill-gotten gains, the Court found the receiver stood "precisely in the shoes of the corporations for which he has been appointed." *Id.*

Knauer asserted a claim of negligence against the defendants – specifically, negligent supervision. *Id.* at 237. The Court noted that the receivership entities were charged with fault at least equal to that of the defendants. *Id.* The receivership entities "were very much at the forefront of the Ponzi scheme." *Id.* Moreover, "the instant Complaint makes clear that the defendants' involvement in the Ponzi scheme as a whole was quite minor." *Id.* Although the bad actors were now disassociated with the entities in receivership, the Court said this did not require the Court to ignore the fact that their nexus to the scheme and perpetrators was far more immediate than that of the defendants. *Id.* at 238. The Court would not "deprive the broker dealers of the defense of *in pari delicto*." *Id.* "The doctrine

26

of *in pari delicto* thus applies to defeat the receiver's claims." *Id*.

As in *Knauer*, here the equities weigh in favor of applying *in pari delicto* to defeat the Receiver's claims as to Southern, at least as to the Receiver's claims that Southern was complicit in the scheme (Counts I, II, III, IV, and VI) as opposed to the recipient of a fraudulent transfer (Count V). The well-pleaded facts of the Complaint make clear that Southern's piece of the Ponzi scheme puzzle was extremely minor and entirely passive. Conversely, the roles of Madison Timber and Adams were far more immediate to the scheme and alleged damages. Adams and Madison Timber were intentional tortfeasors. The facts alleged do not even support the inference Southern knowingly participated in the scheme. As in *Knauer*, there is no just cause to deprive Southern of the defense of *in pari delicto*.

In addition, applying *in pari delicto* here serves public policy. The equities involved with the Receiver's tort claims are entirely different from those involved in her fraudulent transfer claim. It would be manifestly unjust to allow an intentional tortfeasor such as Adams to shift the financial consequences for his crimes to others. This will occur if third parties are required to pay Adams' victims for damages they suffered as a result of Adams' bad acts, and possibly their own negligence. Such a result would encourage Ponzi schemes rather than deter them. Adams could not achieve this liability-shifting on his own behalf. Nor could Madison Timber. Their claims to hold alleged passive tortfeasors liable would be barred by *in pari delicto*, and the Receiver's claims are likewise barred. All of these equities weigh in favor of application of *in pari delicto* to bar the Receiver's claims.

### b.  The Receiver Lacks Standing to Sue on Behalf of Investors.

To the extent the Receiver attempts to avoid application of *in pari delicto* by asserting claims on behalf of the investors, she lacks standing to do so.  It is well established that the Receiver "has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors."  *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 190 (5th Cir. 2013); *Troelstrup v. Index Futures Grp.*, 130 F.3d 1274, 1276 (7th Cir. 1997).  The Receiver acknowledges she may only assert claims available to Adams and Madison Timber. (Compl. ¶ 5, stating the Receiver "stands in Madison Timber's shoes . . .")

Yet, the claims asserted by the Receiver against Southern are not assets of the estates of Adams or Madison Timber for the reasons stated above.  The Receiver conflates the harm to third party investors with harm to Adams and Madison Timber, on whose behalf she has filed suit.  The Receiver may not represent investors in this way.  *Janvey*, 712 F.3d at 190.  The receivership estate's unpaid liabilities to investors are injuries to those investors – not to the Estate.  The Receiver cannot sue, on behalf of Adams and Madison Timber, to collect for injuries Adams *caused* to investors.  *Id*.  Such a claim distorts common logic and reason.

Though the Receiver claims to have accepted assignments of the claims of some investors, those assignments of claims are not listed on her most recent receivership report as assets of the Receivership estate.  The assignment documents are not attached to the complaint.  The investors are not listed in the complaint.  No particulars of their claims are alleged in the complaint.  And even an assignment of

28

*some* investor claims does not give the Receiver standing to assert claims against Southern on behalf of *all* investors for the entire alleged Ponzi scheme and all damages stemming from the scheme.

Were the Receiver permitted to conflate her role as receiver for tortfeasors with her desired role of receiver for victims, myriad problems would arise. A suit by the Receiver on the whole Ponzi scheme, on behalf of some investors, will subject the defendants to multiple liabilities for the same acts if other investors bring their own actions. Conversely, if *res judicata* applies after the Receiver's suit to bar some or all investor claims, the remaining investors risk losing their ability to plead harm specific to their circumstances.

Also, the Receiver does not allege any particularized harm to the assigning investors, such as the dates, times, places of their involvement with the scheme or the amounts of their individual losses. Southern is thus prevented from raising defenses particular to those investors, such as comparative fault. These defenses very likely exist as to specific investors. After all, the Receiver concludes *the defendants* should have gleaned from the terms of the promissory notes signed by the investors that the deals were too good to be true. It was *the investors* who signed those notes. Southern is not even alleged to have had access to them. As between Southern with its alleged extremely limited involvement and an investor who knowingly signed up for a get-rich-quick scheme that the Receiver claims was blatantly obvious to anyone, Southern very likely has meritorious defenses based on contributory negligence or comparative fault. These concerns are the very reasons

29

courts have repeatedly held that a federal equity receiver lacks standing to sue on behalf of investors.

## **CONCLUSION**

For the foregoing reasons, Southern respectfully requests that the Receiver's complaint be dismissed in its entirety as to Southern.

Respectfully submitted, this the 28th of April, 2020.

**SOUTHERN BANCORP BANK**

By:     */s/ Scott Jones*
        M. Scott Jones (MSB #102239)
        Adam V. Griffin (MSB #103560)
        ADAMS AND REESE, LLP
        1018 Highland Colony Pkwy, Ste 800
        Ridgeland, Mississippi 39157
        Office:(601) 353-3234
        Fax:   (601) 355-9708
        scott.jones@arlaw.com
        adam.griffin@arlaw.com

        ~ and ~

        *Pro Hac Vice* Motions Forthcoming:

        Charles T. Coleman (AR Bar #80030)
        Adrienne L. Baker (AR Bar #2007159)
        WRIGHT, LINDSEY & JENNINGS
        LLP
        200 West Capitol Avenue, Suite 2300
        Little Rock, Arkansas 72201-3699
        (501) 371-0808
        FAX: (501) 376-9442
        ccoleman@wlj.com
        abaker@wlj.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record, including the following:

Lilli Evans Bass
Brown Bass & Jeter, PLLC
1755 Lelia Drive, Suite 400
Jackson, Mississippi 39216

Walter D. Willson
Kelly D. Simpkins
Wells Marble & Hurst, PLLC

Brent B. Barriere
Kristen D. Amond
Rebekka C. Veith
Fishman Haygood, LLP

William F. Ray
Paul H. Stephenson, III
J. Collins Wohner
Stephanie M. Rippee
Watkins & Eager PLLC

R. David Kaufman
Cody C. Bailey
Brunini, Grantham, Grower & Hewes, PLLC

This the 28th day of April, 2020

/s/ *Scott Jones*
M. Scott Jones

2069600-v1